**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MARY K. FAY,

                Plaintiff,

vs.                                           Case No. 8:11-cv-1220-T-JRK

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Mary K. Fay ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff was insured for DIB through December 31, 2003. Tr. at 14, 16. Her alleged inability to work was based on bipolar disorder. Transcript of Administrative Proceedings (Doc. No. 12; "Tr."), filed August 31, 2011, at 66, 68, 139. On December 7, 2007, Plaintiff filed an application for DIB, alleging an onset date of September 6, 2003.[2] Tr. at 115-17. Plaintiff's application was denied initially, Tr. at 69-71, and was denied upon reconsideration, Tr. at 72-73.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed August 31, 2011; Reference Order (Doc. No. 14), entered September 6, 2011.

[2] Throughout this Opinion, the undersigned sometimes refers to the period between Plaintiff's alleged onset date and her date last insured as the "relevant time period" or "relevant time frame."

On March 23, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert testified. Tr. at 28-62. At the time of the hearing, Plaintiff was fifty-eight (58) years old, Tr. at 34; as of the date last insured, Plaintiff was fifty (50) years old, Tr. at 35. On May 25, 2010, the ALJ issued a Decision finding Plaintiff not disabled. Tr. at 14-23. On April 27, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's written Decision the final decision of the Commissioner. On June 2, 2011, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff raises two (2) issues. See generally Memorandum of Law (Doc. No. 16; "Pl.'s Mem."), filed October 31, 2011. First, Plaintiff contends that "[t]he ALJ failed to consider the cyclical nature of [Plaintiff's] impairments in this case." Pl.'s Mem. at 18 (capitalization and emphasis omitted). Second, Plaintiff argues that "[t]he ALJ's treatment of the treating physician's opinions in this case was improper." Id. at 23 (capitalization and emphasis omitted). Defendant, responding to Plaintiff's first issue, argues that "[t]he ALJ appropriately considered the evidence in accordance with the demands of the Social Security Act." Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem."), filed December 27, 2011, at 8 (emphasis omitted). In response to the second issue, Defendant contends that "[t]he ALJ properly rejected the opinions of" Plaintiff's treating physicians. Def.'s Mem. at 11 (emphasis omitted). After careful consideration of the parties' respective memoranda, the undersigned finds this matter is due to be reversed and remanded for the reasons explained herein.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 16-23.  At step one, the ALJ observed that Plaintiff "did not engage in substantial gainful activity during the relevant period from her alleged onset date of September 6, 2003, through her date last insured of December 31, 2003."  Tr. at 16 (emphasis and citation omitted).  At step two, the ALJ found that "[d]uring the relevant period, [ Plaintiff] had the following severe impairments: a bipolar disorder; a substance use disorder; and depression."  Tr. at 16 (emphasis and citation omitted).  At step three, the ALJ ascertained that "[d]uring the relevant period, [ Plaintiff] did not have an impairment or combination of impairments that met or medically

---

[3]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

"After careful consideration of the entire record," the ALJ determined that, during the relevant period, Plaintiff "had the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she could perform only simple, routine, repetitive tasks." Tr. at 18 (emphasis and citation omitted). At step four, the ALJ found that "[d]uring the relevant period, [ Plaintiff] was unable to perform any past relevant work" as a "pediatrician and a clinic manager." Tr. at 21 (emphasis and citation omitted). The ALJ indicated that "[d]uring the relevant period, considering [ Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [ Plaintiff] could have performed," Tr. at 21 (emphasis and citation omitted), such as "cashier," "ticket taker," and "surveillance system monitor," Tr. at 22. The ALJ concluded that Plaintiff "was not been under a disability . . . at any time from September 6, 2003, the alleged onset date, through December 31, 2003, the date last insured." Tr. at 23 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises two issues on appeal. Each issue is discussed in turn.

### A. Cyclical Nature of Plaintiff's Bipolar Disorder

Plaintiff argues the ALJ failed to take into account the cyclical nature of her bipolar disorder by focusing solely on the medical records dated between Plaintiff's alleged onset date and her date last insured. Pl.'s Mem. at 19. Defendant contends that "[w]hile Plaintiff has had periods of significant symptoms and decompensation both before and after the relevant period, Plaintiff produced no evidence that these types of debilitating symptoms existed during the relevant period." Def.'s Mem. at 8.

In the ALJ's Decision, she mainly based her reasoning on medical evidence dated between Plaintiff's alleged onset date (September 6, 2003) and Plaintiff's date last insured

(December 31, 2003). See generally Tr. at 16-23. The ALJ primarily considered Plaintiff's testimony and the treatment notes and opinion of Ann Walczynski, M.D. ("Dr. Walczynski"), one of Plaintiff's treating physicians. Tr. at 16-21. The ALJ referenced seven (7) records that show Plaintiff "had Baker Act or psychiatric hospitalizations" but concluded those "hospitalizations occurred before or after the relevant period." Tr. at 19. The ALJ also noted that Plaintiff "was determined to be totally incapacitated, mentally, and required a guardian between March 2008 and August 2009," but Plaintiff's "period of incapacity occurred after the relevant period." Tr. at 19.

To be eligible for DIB, a claimant must show that he or she was disabled on or before his or her date last insured. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (citation omitted); Ware v. Schweiker, 651 F.2d 408, 411 (5th Cir. 1981).[4] "Evidence post-dating an individual's insured status may be relevant and properly considered if it bears 'upon the severity of the claimant's condition before the expiration of his or her insured status.'" Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008) (unpublished) (quoting Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir.1984)). An ALJ should consider "evidence from a physician discussing the severity of an ongoing impairment or offering an opinion as to a claimant's condition prior to the date last insured." Id. (citation omitted); see also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (stating "[e]vidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits might be rewarded") (internal quotations and

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

citation omitted). "To be used for this purpose, the evidence ought to be reasonably proximate to the date last insured." Ward, 2008 WL 1994978, at *4 (internal quotations and citation omitted).

Here, the ALJ's focus on the medical evidence dated during the relevant time frame, to the exclusion of all the other medical evidence in the record, was flawed. The administrative transcript contains detailed documentation of the longstanding nature of Plaintiff's condition and treatment. Rather than making a wholesale rejection of the medical evidence dated outside the relevant time frame, the ALJ should have considered whether any of the evidence is (1) reasonably proximate to Plaintiff's date last insured and (2) bears upon the severity of Plaintiff's condition; and if so, the ALJ then should have determined the effects of such evidence, if any, on her Decision. See Ward, 2008 WL 1994978, at *4. For example, on April 25, 2003, less than five (5) months prior to Plaintiff's alleged onset date, Dr. Walczynski recommended that Plaintiff be hospitalized, but Plaintiff and her husband apparently refused. Tr. at 336. Plaintiff's husband indicated he would stay with Plaintiff twenty-four (24) hours per day. Tr. at 336. During that same appointment, Dr. Walczynski "summarized for [Plaintiff and husband] that [Plaintiff] has several medical [problems] that are chronic . . . and that relapses are part of these." Tr. at 336. Additionally, less than two (2) months after Plaintiff's date last insured, on February 17, 2004, Plaintiff claimed that her depression had increased "for the past [] couple of days," and she complained of "crying spells, sad feeling, sleep disturbances, [decreased] appetite, . . . [and] feeling hopeless/helpless." Tr. at 245. Instead of considering the totality of the evidence, it appears

the ALJ simply ignored all evidence dated outside the relevant period. Cf. Ward, 2008 WL 1994978, at *4.

Moreover, the ALJ selectively relied on Dr. Walczynski's treatment notes during the relevant time period that reflect Plaintiff was feeling "better," Tr. at 19, 20-21, while disregarding treatment notes during that time frame that show the opposite. Cf. Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011) (noting that where a claimant has a severe impairment of bipolar disorder, an ALJ cannot "cherry-pick[]" records that show good results to the exclusion of evidence reflecting poor results). For example, on October 23, 2003, Plaintiff reported to Dr. Walczynski that she had been taking hydrocodone and ambien, and she had been drinking "only [a] couple drinks for [the] last few days." Tr. at 325. Plaintiff also stated that "she didn't tell [Dr. Walczynski] about using drugs [because] 'it was embarrassing.'" Tr. at 322 (attributing internal quotations to Plaintiff). Dr. Walczynski documented that Plaintiff reported "feeling 'sick and miserable,'" and she was "'tired of feeling depressed.'" Tr. at 322 (apparently quoting Plaintiff).[5] On December 11, 2003, Plaintiff reported she had "been feeling down." Tr. at 311. Plaintiff also complained of a "lack of motivation, [and she had] no interest in reading." Tr. at 311.

Upon review, the undersigned finds that the ALJ's analysis of the medical evidence in the record is flawed because the ALJ ignored evidence dated outside the relevant time period and selectively cited to evidence within the time period. Given that bipolar disorder by its very nature is "episodic," a quick snapshot of medical evidence, taken out of context,

---

[5] Although the ALJ cited to this treatment note when discussing Plaintiff's limitations with respect to concentration, persistence, or pace, Tr. at 17, it does not appear that the ALJ considered this treatment note when evaluating Plaintiff's overall condition.

can lead to fundamental error. See Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006) (Posner, J.) (referring to bipolar disorder as "episodic"); see also Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011) (citations omitted) (noting that "any single notation that a [bipolar] patient is feeling better or has had a 'good day' does not imply that the condition has been treated"). This is especially true here where the relevant time period consists of less than four (4) months. The ALJ's failure to properly consider the medical evidence of record frustrates judicial review. Therefore, the undersigned cannot determine whether substantial evidence supports the ALJ's Decision in this regard.

### B. Opinions of Plaintiff's Treating Physicians

Plaintiff's second issue deals with the ALJ's treatment of the opinions of Plaintiff's treating physicians, Dr. Walczynski and Thomas McClane, M.D. ("Dr. McClane"), who both opined, inter alia, Plaintiff met Listing 12.04 prior to her date last insured. Pl.'s Mem. at 23-25; see also Tr. at 743, 745. Defendant contends that "the ALJ clearly articulated substantial reasons for finding good cause to reject the opinions of Dr. Wlaczynski [sic] and Dr. McClane." Def.'s Mem. at 12.

On March 9, 2010, Dr. McClane wrote a letter to Plaintiff's counsel in which he indicated he had seen Plaintiff twenty-one (21) times between March 27, 2008 and February 2010. Tr. at 745; see also Tr. at 655-80. Dr. McClane opined that Plaintiff "has had a Bipolar Disorder for many years[, and] . . . she was, within reasonable probability, disabled from any gainful employment on 12/31/03 and subsequently." Tr. at 745. He also indicated that Plaintiff's "alcohol abuse is a manifestation of her Bipolar Disorder." Tr. at 745. Finally, Dr. McClane stated that Plaintiff "has met the criteria for Social Security listing 12.04 since that

-9-

time and probably substantially before 12/03. She met those criteria when she was not drinking as well as when she was drinking." Tr. at 745.

Dr. Walczynski treated Plaintiff from about November 19, 2002 to February 4, 2004. Tr. at 300-50. On March 17, 2010, Dr. Walczynski opined that Plaintiff "meets the Social Security listing 12.04 as of December 31, 2003." Tr. at 743. Dr. Walczynski noted that Plaintiff met that listing "even if she was not drinking or having substance abuse problems. Her Bipolar disorder was so severe that alcohol and substance abuse were not material to her disability. This assessment is valid as of 12/31/03 and before." Tr. at 743. Dr. Walczynski indicated she had not seen Plaintiff after December 2003. Tr. at 743.

The ALJ concluded that the opinions of Drs. Walczynski and McClane "are not accorded controlling weight because opinions on the issues of whether the claimant is disabled or unable to work are reserved to the Commissioner" and the opinions "are inconsistent with the evidence (as set forth below)." Tr. at 20 (internal quotations and citations omitted). The ALJ then cited to and summarized eight (8) treatment notes from Dr. Walczynski dated between September 4, 2003 and December 29, 2003. Tr. at 20-21. The ALJ's summaries of each treatment note reflect, inter alia, that Plaintiff had "been good," she "felt better," and "she was active, exercising, socializing, and going to AA meetings." Tr. at 20-21.

The Regulations instruct ALJs how to weigh the medical opinions of treating physicians[6] properly. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely

---

[6] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R.
(continued...)

to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the

---

[6](...continued)
§ 404.1502.

weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, the ALJ did not "state with particularity the weight" assigned to the opinions of Dr. Walczynski and Dr. McClane. Sharfarz, 825 F.2d at 279-80. Instead, the ALJ concluded that the opinions were "not accorded controlling weight," which does not indicate the actual weight assigned. Tr. at 20. This conclusion is further clouded by the fact that the ALJ relied solely on Dr. Walczynski's treatment notes when evaluating the effects of Plaintiff's severe impairments. See Tr. at 16-17.

Further, while the ultimate disability determination is left to the Commissioner, opinions on issues reserved to the Commissioner "must never be ignored." SSR 96-5P, 1996 WL 374183, at *3. Even when a medical source opines "on an issue reserved to the Commissioner, [an ALJ] must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." Id. So while the ALJ was not required to afford any particular weight to Dr. Walczynski's and Dr. McClane's conclusions that Plaintiff met listing 12.04, the ALJ was still required to "apply the applicable factors in 20 CFR 404.1527(d)." Id. One of the factors listed in 20 C.F.R. § 404.1527(d) is consistency with other evidence of record. In finding these conclusions inconsistent with the evidence, the ALJ listed the same eight (8) treatment notes from Dr. Walczynski discussed above in section IV.A. The ALJ's selective list of eight (8) treatment notes from Dr. Walczynski suffers from the same fatal flaws as identified above with regard to Plaintiff's first issue.

Dr. Walczynski and Dr. McClane treated Plaintiff for a long period of time, and their medical opinions, which are not limited solely to their conclusions that Plaintiff listing 12.04, were presumably based on the longitudinal picture they had acquired over that length of time. Overall, the ALJ's treatment of Dr. Walczynski's opinions and Dr. McClane's opinions is not supported by substantial evidence.

## V. Conclusion

In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

> (A) Reconsider the totality of the record, ensuring that all relevant medical evidence is appropriately considered;
>
> (B) Reevaluate the opinions of Dr. Walczynski and Dr. McClane and state with particularity the weight afforded to each; if the opinions are discounted, adequate reasons showing good cause for discounting them shall be provided and shall be supported by substantial evidence; and
>
> (C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is directed to close the file.

3.  If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 27, 2012.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jld
Copies to:
Counsel of Record